UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
JOHN MARSHALL EVERETT, PAMELA A.          :
KRAMER, and WALTER W. LAWRENCE,           :
on Behalf of Themselves and all Others Similarly   :
Situated,                                 :
                                          :
                        Plaintiffs,       :
                                          :     05 CV 00296 (DAB)
            v.                            :        ECF CASE
                                          :
MICHAEL BOZIC, EDWIN J. GARN,             :
WAYNE E. HEDIEN, DR. MANUEL H.            :
JOHNSON, JOSEPH J. KEARNS,                :
MICHAEL E. NUGENT, FERGUS REID,           :
CHARLES A. FIUMEFREDDO, JAMES F.          :
HIGGINS, MORGAN STANLEY DEAN              :
WITTER & CO., INC., MORGAN STANLEY        :
INVESTMENT ADVISORS, and                  :
JOHN DOES NO. 1 through 100,              :
                                          :
                        Defendants.       :
----------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF THE
# MORGAN STANLEY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Steven F. Molo (SM 1818)
Brian H. Polovoy (BP 4723)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022-6069
Telephone:  (212) 848-4000
Facsimile:   (212) 848-7179

Attorneys for Defendants
Morgan Stanley and
Morgan Stanley Investment Advisors Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

I.   PLAINTIFFS LACK STANDING (COUNTS I - V)................................................ 4

    A.   Plaintiffs Fail to Allege a Specific Injury. ............................................................ 4

    B.   Plaintiffs Cannot Assert Claims Relating to Funds in Which They
        Hold No Interest.................................................................................................... 5

II.  COUNTS I, II, III AND V MUST BE DISMISSED BECAUSE THEY
    ARE DERIVATIVE IN NATURE........................................................................... 5

    A.   Plaintiffs' Common Law Claims of Breach of Fiduciary Duty
        (Count I) and Negligence (Count II) and Claims Under ICA
        Section 36(a) for Breach of Fiduciary Duty Involving Personal
        Misconduct (Count III) and ICA Section 47(b) for Violation of the
        Advisory Agreement (Count V) Belong to the Funds and Not the
        Individual Fundholders. ........................................................................................ 5

    B.   Plaintiffs Failed to Make a Board Demand........................................................... 8

III. NO PRIVATE RIGHT OF ACTION EXISTS FOR SHAREHOLDERS
    UNDER ICA SECTION 36(a) FOR BREACH OF FIDUCIARY DUTY
    INVOLVING PERSONAL MISCONDUCT (COUNT III) AND ICA
    SECTION 47(b) FOR VIOLATION OF AN ADVISORY AGREEMENT
    (COUNT V). ............................................................................................................ 9

IV.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ICA (COUNTS
    III - V). .................................................................................................................. 11

    A.   ICA § 36(a) (Count III) is Limited to Breaches of Duty That
        Involve "Personal Misconduct," and the Complaint Contains No
        Allegations of Personal Misconduct. ................................................................... 11

    B.   ICA § 36(b) (Count IV) is a Narrow Provision With a Specific
        Application – to Remedy Excessive Advisory Fees Paid by Funds
        to Their Advisors – a Claim That Plaintiffs Have Not Made Here. ..................... 11

      C.      ICA § 47(b) (Count V) is a Remedial Provision That Requires a Violation of Other Provisions of the ICA and is not, on a Stand-Alone Basis, a Cause of Action. .......................................................................... 12

CONCLUSION................................................................................................................. 14

## TABLE OF AUTHORITIES

### CASES

Alexander v. Sandoval, 532 U.S. 275 (2001) ...............................................................10

Blasberg v. Oxbow Power Corp., 934 F. Supp. 21 (D. Mass. 1996) ...............................6

Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994) ............10

Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870, 2005 WL 195520
    (E.D.N.Y. Jan. 21, 2005), vacated pursuant to settlement (E.D.N.Y. Apr. 12,
    2005) ......................................................................................................................10

Cigal v. Leader Dev. Corp., 557 N.E.2d 1119 (Mass. App. Ct. 1990) ...........................6

Conley v. Gibson, 355 U.S. 41 (1957)..............................................................................2

DH2, Inc. v. Athanassiades, 359 F. Supp. 2d 708 (N.D. Ill. 2005) ...............................10

Daily Income Fund, Inc. v. Fox, 464 U.S. 523 (1984) ...................................................12

Demoulas v. Demoulas Super Markets, Inc., No. 033741865 2004 WL 1895052
    (Mass. Super. Ct. Aug. 2, 2004) ..............................................................................8

Dorchester Investors v. Peak Int'l Ltd., 134 F. Supp. 2d 569 (S.D.N.Y. 2001)............10

Drasner v. Thomas McKinnon Sec., Inc., 433 F. Supp. 485 (S.D.N.Y. 1977)...............13

In re Dreyfus Aggressive Growth Mut. Fund Litig., No. 98 Civ. 4318 (HB),
    2000 WL 10211 (S.D.N.Y. Jan. 6, 2000) ................................................................7

Farragut Mortgage Co. v. Arthur Andersen LLP, No. 95-6231-B, 1999 WL 823656
    (Mass. Super. Ct. Aug. 5, 1999) ..............................................................................6

Galfand v. Chestnutt Corp., 545 F.2d 807 (2d Cir. 1976) .............................................13

Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923 (2d Cir. 1982) .............12

Goodman v. Poland, 395 F. Supp. 660 (D. Md. 1975) .....................................................6

Green v. Nuveen Advisory Corp., 186 F.R.D. 486 (N.D. Ill. 1999)..................................5

Green v. Nuveen Advisory Corp., 295 F.3d 738 (7th Cir. 2002) ...................................11

Greenspun v. Lindley, 330 N.E. 2d 79 (1975)...................................................................5

Hurley v. Fed. Deposit Ins. Co., 719 F. Supp. 27 (D. Mass. 1989) ..................................6

Kamen v. Kemper Fin. Servs., 500 U.S. 90 (1991) .........................................................5, 8

In re Kauffman Mut. Fund Actions, 479 F.2d 257 (1st Cir. 1973) ..................................8

Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970) .......................................5

L'Europeenne de Banque v. La Republica de Venezuela, 700 F. Supp. 114 (S.D.N.Y.
        1988) ...................................................................................................................2

Marcus v. Putnam, 60 F.R.D. 441 (D. Mass. 1973) .......................................................7

In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243
        (S.D.N.Y. 2003) ...............................................................................................7, 10

meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.,
        260 F. Supp. 2d 616 (S.D.N.Y. 2003) .............................................................10

Midgal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001) .....................12

Olmsted v. Pruco Life Ins. Co., 283 F.3d 429 (2d Cir. 2002) .......................................10

Pagounis v. Pendleton, 753 N.E.2d 808 (Mass. App. Ct. 2001) ....................................6

Prescott v. Allstate Life Ins. Co., 341 F. Supp. 2d 1023 (N.D. Ill. 2004) .....................11

Raines v. Byrd, 521 U.S. 811 (1997) ...............................................................................4

Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) .............................................................2

Strougo v. Bassini, 282 F.3d 162 (2d Cir. 2002) ........................................................5, 6

Strougo v. BEA Assocs., No. 98 CV 3725 (RWS), 1999 WL 147737,
        (S.D.N.Y. Mar. 18, 1999) ................................................................................11

Tarlov v. Paine Webber CashFund, Inc., 559 F. Supp. 429 (D. Conn. 1983) ..............12

In re Van Wagoner Funds, Inc., No. C 02-3383 JSW, 2004 WL 2623972 (N.D.
        Cal. July 27, 2004) ...........................................................................................10

Waller v. Waller, 49 A.2d 449 (Md. 1946) ......................................................................6

Werbowsky v. Collomb, 766 A.2d 123 (Md. 2001) ..........................................................9

White v. Heartland High Yield Mun. Bond Fund, 237 F. Supp. 2d 982 (E.D. Wis. 2002)..................................................................................................................10

Williams v. Bank One Corp., No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) .........................................................................................5

Ying Jing Gan v. City of New York, 996 F.2d 522 (2d Cir. 1993) ................................2

Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994) ...................................................2

## STATUTES & RULES

Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-1 et seq. (1940).........1, 9, 11, 15

ICA § 26(f)....................................................................................................................10

ICA § 27(i)....................................................................................................................10

ICA § 36(a) ..................................................................................................... passim

ICA § 36(b) ...................................................................................................2, 10, 11, 12

ICA § 47(b) ..................................................................................................... passim

ICA § 47(b)(1) ...............................................................................................................9

Mass. Gen. Laws Ann. ch. 156 D, § 7.42 (West 2003).................................................8

Fed. R. Civ. P. 23.1 ...................................................................................................2, 8, 9

## OTHER AUTHORITIES

2B Fletcher Cyclopedia of the Law of Private Corporations, § 5911.............................6

Defendants Morgan Stanley ("Morgan Stanley," sued as "Morgan Stanley Dean Witter & Co., Inc.") and Morgan Stanley Investment Advisors Inc. ("MSIA," sued as "Morgan Stanley Investment Advisors") respectfully submit this memorandum of law in support of their motion to dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action.

## <u>PRELIMINARY STATEMENT</u>

This action is one of more than forty lawsuits filed by the same plaintiffs' counsel against the mutual fund industry. Plaintiffs allege – *on information and belief* – that Morgan Stanley mutual funds failed to participate in hundreds of class action settlements in which they were eligible to file a proof of claim, causing harm to the mutual funds by "leaving on the table" millions of dollars in securities class action settlement recoveries. Plaintiffs' counsel – who have made identical allegations against virtually every major mutual fund group – allege that the defendants breached duties owed them under the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-1, *et seq.* (the "ICA") and state common law. Plaintiffs' claims fail as a matter of law.

*First*, plaintiffs lack standing. They do not identify in which, if any, Morgan Stanley mutual funds they hold shares; nor do they specify whether that particular fund was eligible to recover any class action settlement proceeds but failed to do so. Plaintiffs cannot sue on behalf of funds in which they do not own shares.

*Second*, four out of five counts – breach of fiduciary duty (Count I); negligence (Count II); breach of fiduciary duty involving personal misconduct under ICA § 36(a) (Count III); and violation of the advisory agreement under ICA § 47(b) (Count V) – are derivative in nature, and plaintiffs have no direct right of action. Plaintiffs have failed to make demand on the

trustees or directors of the funds – which they are required to do under Fed. R. Civ. P. 23.1 and applicable state law governing derivative claims.

       ***Third***, there is no private right of action under ICA § 36(a) (Count III) or ICA § 47(b) (Count V).

       ***Fourth***, plaintiffs fail to state a claim under the ICA.  ICA § 36(a) (Count III) is limited to breaches of duty that involve "personal misconduct," and the Complaint contains no allegations of personal misconduct.  ICA § 36(b) (Count IV) is a narrow provision with a specific application – to remedy excessive advisory fees paid by funds to their advisors – a claim that plaintiffs have not made here.  ICA § 47(b) (Count V) is a remedial provision that requires a violation of other portions of the ICA and is not, on a stand-alone basis, a cause of action.

       This Court should see plaintiffs' complaint for what it is – a substantively and procedurally deficient suit launched as part of an undifferentiated assault on the mutual fund industry.  This fishing expedition, filed in the hopes of happening upon a wrong rather than redressing one, must be dismissed.

## STATEMENT OF FACTS[1]

       Plaintiffs purport to bring this action on behalf of themselves and a putative nationwide class of all persons owning stock in 83 Morgan Stanley open-ended mutual funds that

---

[1] Paragraph numbers correspond to plaintiffs' Complaint dated January 12, 2005 ("Compl."), a copy of which is attached as Exhibit A to the Declaration of Brian H. Polovoy, dated May 6, 2005 ("Polovoy Decl.").  While the complaint's well-pleaded allegations are, solely for purposes of this motion, accepted as true, Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness."  Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir. 1993); L'Europeenne de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. 1988).  Similarly, "naked assertions" without supporting facts need not be accepted as true.  Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994).  "Liberally reading the complaint does not require ignoring specific factual allegations in order to broadly read sweeping equivocal assertions."  Shapiro v. Cantor, 123 F.3d 717, 721 (2d Cir. 1997).

hold equity securities (the "Funds") from January 12, 2002 through the present.  (Compl. ¶ 6, n.2.)  Other than alleging that they owned "one of the Funds," plaintiffs do not identify either the Fund in which they owned shares or the dates of ownership.  (Id. ¶ 10.)

The Funds are organized primarily as Massachusetts business trusts, with approximately five Funds organized as Maryland corporations.  (Polovoy Decl. ¶ 3.)  Defendant MSIA is the investment advisor to the Funds.  (Compl. ¶ 13.)  Defendant Morgan Stanley is the ultimate parent company of MSIA.  The Complaint also names as defendants nine individuals who have served as trustees of certain of the funds.[2]

Plaintiffs claim that defendants failed to cause the Funds to participate in class action settlements involving securities held by those Funds.  (Compl. ¶ 1.)  Plaintiffs list 136 class action settlements in the Complaint in which the Funds were supposedly eligible to participate but failed to do so.  (Id. ¶ 24.)  As a result, plaintiffs allege that "monies contained in dozens of Settlement Funds, which rightfully belonged to the Funds' investors have gone unclaimed."  (Id. ¶ 5.)

Demonstrating the utter lack of investigation that preceded the filing of this Complaint, plaintiffs parrot Rule 11 and state that the Complaint is brought "upon information and belief that the allegations are likely to have evidentiary support and upon the representations that they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support."  (Compl. ¶ 5.)  Substantially identical complaints filed by plaintiffs' counsel, alleging in each case that different mutual funds committed precisely the same failures in 136 class action settlements, were filed in numerous jurisdictions and are currently pending before Judges Jones, Kaplan, and Lynch in this District.

---

[2] Michael Bozic, Edwin J. Garn, Wayne E. Hedien, Dr. Manual H. Johnson, Joseph J. Kearns, Michael E. Nugent, Fergus Reid, Charles A. Fiumefreddo, and James F. Higgins.  (Compl. ¶ 12.)

(Polovoy Decl. ¶¶ 4-5, Exs. B-E.)  Defendants have filed a motion to dismiss in the action before

Judge Kaplan.  (Id. ¶ 5.)  (Plaintiffs' counsel dismissed another suit pending before Judge

Buchwald following a pre-motion conference on defendants' proposed motion to dismiss.  Id.

The remaining suits in this District have also been dismissed.)

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING (COUNTS I - V).

### A.    Plaintiffs Fail to Allege a Specific Injury.

Plaintiffs fail to plead facts sufficient to show that they have standing.  "To meet

the standing requirements of Article III, '[a] plaintiff must allege *personal injury* fairly traceable

to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"

Raines v. Byrd, 521 U.S. 811, 818 (1997) (emphasis in original) (citations omitted).  Among

other things, this requirement mandates that plaintiffs "establish that their claimed injury is

personal, particularized, concrete, and otherwise judicially cognizable."  Id. at 820.  Plaintiffs do

not identify in which, if any, of Morgan Stanley's mutual funds they hold shares; nor do they

specify whether that particular fund was eligible to recover any class action settlement proceeds

but failed to do so.  Instead, plaintiffs' alleged injury is wholly speculative:  plaintiffs allege --

"*upon information and belief*" -- that "the Funds" had claims in "many, if not all, of" 136

securities class action suits and "failed to submit Proof of Claim forms in these cases and thereby

forfeited Plaintiffs' rightful share of the recover[y] obtained in the securities class actions."

(Compl. ¶¶ 24, 26.)  Plaintiffs cannot file a lawsuit that simply guesses that a defendant may

have committed a wrong.

4

### B. Plaintiffs Cannot Assert Claims Relating to Funds in Which They Hold No Interest.

Plaintiffs allege only that they "owned one of the Funds." (Compl. ¶ 10.) They fail to identify basic information such as in which "*one* of the [**83**] Funds" they supposedly held shares. A plaintiff must own shares of the fund in which the purported wrongdoing occurred. A plaintiff may not maintain a suit against funds in which he does not hold shares. See Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970) (holding that plaintiff who held four mutual funds lacked standing to maintain class derivative action on behalf of 61 other allegedly similarly situated mutual funds); Williams v. Bank One Corp., No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) (plaintiff did not have standing to bring derivative action against funds in which he did not own shares). Further, plaintiffs fail to plead when they held such Funds, alleging only that they owned one Fund "at all relevant times." (Compl. ¶ 10.)

Plaintiffs' lack of standing is fatal to all of the claims asserted in the Complaint. Accordingly, this action must be dismissed in its entirety.

## II. COUNTS I, II, III AND V MUST BE DISMISSED BECAUSE THEY ARE DERIVATIVE IN NATURE.

### A. Plaintiffs' Common Law Claims of Breach of Fiduciary Duty (Count I) and Negligence (Count II) and Claims Under ICA Section 36(a) for Breach of Fiduciary Duty Involving Personal Misconduct (Count III) and ICA Section 47(b) for Violation of the Advisory Agreement (Count V) Belong to the Funds and Not the Individual Fundholders.

Even if plaintiffs collectively held shares in each of the 83 Morgan Stanley mutual funds, their claims are derivative and fail as a matter of law.[3] Under Massachusetts law,

---

[3] The law of a mutual fund's state of incorporation controls whether a claim brought by that fund's shareholder should be brought derivatively or directly. See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108-09 (1991); Strougo v. Bassini, 282 F.3d 162, 168-69 (2d Cir. 2002). Here, Massachusetts or Maryland law likely governs. Plaintiffs have not identified the Fund in which they claim to have an ownership interest, nor the state under whose laws that Fund is organized. During the relevant timeframe, the Funds were mainly organized as Massachusetts business

an "action is derivative if the gravamen of the complaint is injury to the corporation, or to the
whole body of its stock or property without any severance or distribution among individual
shareholders, or it seeks to recover assets for the corporation or to prevent the dissipation of its
assets."  Farragut Mortgage Co. v. Arthur Andersen LLP, No. 95-6231-B, 1999 WL 823656 at
*17 (Mass. Super. Ct. Aug. 5, 1999) (citing 12B Fletcher Cyclopedia of the Law of Private
Corporations, § 5911).  Likewise, in Maryland, "a stockholder cannot sue individually to recover
damages for injuries to the corporation."  Goodman v. Poland, 395 F. Supp. 660, 687 (D. Md.
1975).

      Where the injury is indirect, in the form of a reduction in shareholder value, and
no different than what any other shareholder might claim, "the only remedy that might be
available (other than a direct action by the corporation) [is] a stockholder's derivative suit."
Pagounis v. Pendleton, 753 N.E.2d 808, 812 (Mass. App. Ct. 2001); see Blasberg v. Oxbow
Power Corp., 934 F. Supp. 21 (D. Mass. 1996) (holding claim that defendant breached a
fiduciary duty, causing reduction in the value of corporate assets, is a claim that is held by the
corporation itself); Hurley v. Fed. Deposit Ins. Co., 719 F. Supp. 27, 30 (D. Mass. 1989) (holding
that "corporate mismanagement ... resulting in lower stock prices cannot form the basis for an
individual shareholder lawsuit against the wrongdoer."); Cigal v. Leader Dev. Corp., 557 N.E.2d
1119, 1123 (Mass. App. Ct. 1990) (holding that breach of fiduciary duty claims against corporate
directors seek recovery of funds owed to corporation and are therefore derivative).  Again, these
same principles hold true under Maryland law.  See Waller v. Waller, 49 A.2d 449, 452 (Md.

---

trusts and, in limited circumstances, Maryland corporations.  Massachusetts business trusts are
treated like corporations when applying Massachusetts law regarding shareholder derivative
suits.  Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999) (citing cases);
Greenspun v. Lindley, 330 N.E. 2d 79, 81-82 (1975).

1946) (holding that a stockholder could not maintain a direct action "to recover damages for …
breach of trust which depreciated the capital stock or rendered it valueless"); <u>Strougo v. Bassini</u>,
282 F.3d 162, 174 (2d Cir. 2002) (holding that under Maryland law shareholders cannot maintain
direct action where alleged injury is loss in share value from costs of rights offering).

   Here, plaintiffs' state law claims of breach of fiduciary duty (Count I), negligence
(Count II), and claims under ICA §§ 36(a) (Count III) and 47(b) (Count V) are derivative
because they all are based exclusively on an alleged injury to the Funds.  It is undisputed that any
settlement proceeds paid to the Funds would have benefited the Funds.  Plaintiffs concede this
point, alleging that if defendants had submitted the proofs of claim they allegedly neglected to
file, "the settlement funds would have increased the total assets held by the Funds."  (Compl.
¶ 25.)  Any benefit plaintiffs would have derived from an increase in assets to the Fund would
flow "merely as they are owners of the corporate stock" and would have been proportionately
identical to the benefit enjoyed by all other investors in the Fund.  Accordingly, plaintiffs' claims
under ICA §§ 36(a) (Count III) and 47(b) (Count V) and common law fiduciary duty (Count I)
and negligence (Count II) claims fail because they were brought directly as a class action on
behalf of fund shareholders, instead of derivatively on behalf of the Funds.  <u>See</u> <u>Marcus v.
Putnam</u>, 60 F.R.D. 441, 444 (D. Mass. 1973) (dismissing ICA claims under Massachusetts law
because they improperly had been asserted as direct, rather than derivative, claims); <u>In re Merrill
Lynch & Co. Research Reports Sec. Litig.</u>, 272 F. Supp. 2d 243, 260-61 (S.D.N.Y. 2003) (under
Maryland law, ruling that claims that "Fund's net asset value declined … plainly show that
plaintiff's alleged injury was derivative, by virtue of her ownership of shares in the Fund"); <u>In re
Dreyfus Aggressive Growth Mut. Fund Litig.</u>, No. 98 Civ. 4318 (HB), 2000 WL 10211
(S.D.N.Y. Jan. 6, 2000) (same).

**B.    Plaintiffs Failed to Make a Board Demand.**

Even had plaintiffs brought this lawsuit properly as a derivative action, it would be barred because of their failure to make a pre-suit demand upon the trustees.  Although an individual fundholder may pursue a derivative claim, he may do so only if a demand is first made upon the board.  Fed. R. Civ. P. 23.1 requires a plaintiff bringing a derivative action either to make a demand on the entity on whose behalf he wishes to proceed or, alternatively, to plead with particularity the reasons why demand should be deemed excused under governing state law. It ensures that the decision to initiate litigation is made, in the first instance, by the board itself, and precludes shareholders from usurping that role.  See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 96 (1991) (holding that law of state of incorporation applies to a derivative action brought under the ICA).  This is "not a technical rule of pleading, but one of substantive right."  In re Kauffman Mut. Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973).

The law of a mutual fund's state of incorporation determines whether the demand requirement may be excused.  Kamen, 500 U.S. at 108.  In Massachusetts – a "universal demand" state – demand is never excused:  "No shareholder may commence a derivative proceeding until:  (1) a written demand has been made upon the corporation to take suitable action; and (2) 90 days have elapsed from the date the demand was made."  Mass. Gen. Laws Ann. ch. 156D, § 7.42 (West 2003).  As a Massachusetts court recently reiterated, "a demand must be made prior to the commencement of *every* derivative case, whether or not the directors are independent with respect to the matter subject to the demand."  Demoulas v. Demoulas Super Markets, Inc., No. 033741865 BLS, 2004 WL 1895052, at *1 (Mass. Super. Ct. Aug. 2, 2004) (emphasis added).

Although Maryland is not a "universal demand" state, it emphasizes the importance of demand, noting that "demand futility is a very limited exception . . . to be applied

8

only when . . . demand or a delay . . . would cause irreparable harm to the corporation or . . . a majority of the directors are so personally and directly conflicted."  Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2001).  This rule enables a board to consider the conduct alleged, and consider remedial action, before litigation is begun, and eliminates the cost and burden to the parties as well as the court of litigating the question of whether demand is required.  Here, plaintiffs make no allegations of demand futility at all, much less allege that making demand would cause "irreparable harm" or that a majority of the directors are "so personally and directly conflicted."  Indeed, there is no mention of the names of the trustee defendants after they are listed in paragraph 12 of the Complaint.

Because plaintiffs' claims are derivative and they have failed to comply with Fed. R. Civ. P. 23.1, plaintiffs' claims under ICA §§ 36(a) (Count III) and 47(b) (Count V) and their state law claims of breach of fiduciary duty (Count I) and negligence (Count II) must be dismissed.

**III.    NO PRIVATE RIGHT OF ACTION EXISTS FOR SHAREHOLDERS UNDER ICA SECTION 36(a) FOR BREACH OF FIDUCIARY DUTY INVOLVING PERSONAL MISCONDUCT (COUNT III) AND ICA SECTION 47(b) FOR VIOLATION OF AN ADVISORY AGREEMENT (COUNT V).**

Plaintiffs' claims under ICA § 36(a) (Count III) and ICA § 47(b) (Count V) fail because there is no private right of action under either of those sections of the ICA:

- ICA § 36(a) expressly provides only for an action by the SEC:  "The Commission is authorized to bring an action … [regarding] any act or practice constituting a breach of fiduciary duty involving personal misconduct." 15 U.S.C. § 80(a)-35(a).

- ICA § 47(b) expressly provides a remedy, not a cause of action, stating that "[a] contract that is made, or whose performance involves a violation of the title, or of any rule, regulation, or order thereunder, is unenforceable by either party …."  ICA § 47(b)(1), 15 U.S.C. § 80(a)-46(b).

The Supreme Court has made plain that federal courts should not read a private right of action into a statute where, as here, the statute's plain language does not support such a right.  See Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 177, 185-187 (1994) (private rights of action should be based upon express statutory authority); Alexander v. Sandoval, 532 U.S. 275, 287 (2001) (past decisions reflecting judicial willingness to make statutory purpose effective through implied rights of action belong to an "*ancien regime*").

Thereafter, courts in this Circuit and others have held consistently that there is no implied private right of action under the ICA.  In Olmsted v. Pruco Life Ins. Co., 283 F.3d 429 (2d Cir. 2002), the Second Circuit refused to imply a private right of action under Sections 26(f) and 27(i) of the ICA.  The court held that absent specific language authorizing a private right of action, "we must presume that Congress did not intend one."  Id. at 432.  Since Olmsted, federal courts considering the question are in accord – there is no implied right of action under the ICA.[4] Recently, in Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005), the court held that there is no private right of action under ICA  § 36(a), specifically noting Congress' failure to create a private right of action for ICA § 36(a) as it did for § 36(b).[5]  Similarly, ICA § 47(b) expressly provides standing only for those who are

---

[4] See DH2, Inc. v. Athanassiades, 359 F. Supp. 2d 708 (N.D. Ill. 2005) (no private right of action exists under Section 17(j)); In re Van Wagoner Funds, Inc., No. C 02-3383 JSW, 2004 WL 2623972 (N.D. Cal. July 27, 2004) (Section 34(b)); In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 255-259 (S.D.N.Y. 2003) (Section 34(b)); meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P., 260 F. Supp. 2d 616 (S.D.N.Y. 2003) (Section 12(d)(1)(A)); White v. Heartland High Yield Mun. Bond Fund, 237 F. Supp. 2d 982 (E.D. Wis. 2002) (Sections 22 and 34(b)); Dorchester Investors v. Peak Int'l Ltd., 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001) (Section 34(b)).

[5] Although the decision in Chamberlain was vacated pursuant to a settlement agreement, the court stated plainly that "this does not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order."  Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870 (E.D.N.Y. Apr. 12, 2005).

parties to an advisory agreement, and there is no independent private right of action under that statute.  Since the plaintiff shareholders are not parties to the advisory agreement, they lack standing to assert a claim under § 47(b).

**IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ICA (COUNTS III - V).**

      **A.   ICA § 36(a) (Count III) is Limited to Breaches of Duty That Involve "Personal Misconduct," and the Complaint Contains No Allegations of Personal Misconduct.**

Plaintiffs' ICA § 36(a) claim fails also because they do not allege that defendants engaged in personal misconduct.  Section 36(a) creates a cause of action for "breach of fiduciary duty involving personal misconduct."  15 U.S.C. § 80a-35(a).  It is therefore not enough for plaintiffs to allege that the defendants "breached their fiduciary duty arising under Section 36(a) of the ICA by failing to submit Proof of Claim forms."  (Compl. ¶ 39.)  Under § 36(a), "personal misconduct refers to misconduct that involves self-dealing by investment company or other insiders."  Prescott v. Allstate Life Ins. Co., 341 F. Supp. 2d 1023, 1029 (N.D. Ill. 2004) (citations omitted).  Here, plaintiffs make no allegations whatsoever of self-dealing or personal impropriety.  As a result, plaintiffs' § 36(a) claim fails as a matter of law.

      **B.   ICA § 36(b) (Count IV) is a Narrow Provision With a Specific Application – to Remedy Excessive Advisory Fees Paid by Funds to Their Advisors – a Claim That Plaintiffs Have Not Made Here.**

Plaintiffs do not and cannot allege the requisite elements of a claim under § 36(b) – which relates solely to excessive fees.  Section 36(b) recognizes a "fiduciary duty with respect to the receipt of compensation for services."  15 U.S.C. § 80a-35(b).  Courts construing § 36(b) recognize that it creates a narrow duty, limited to breaches of fiduciary duty relating to investment advisory fees, and that plaintiffs may not use § 36(b) to bring general breach of fiduciary duty claims.  See Green v. Nuveen Advisory Corp., 295 F.3d 738, 743 (7th Cir. 2002) (stating that "Congress enacted § 36(b) to provide a narrow federal remedy that is significantly

more circumscribed than common law fiduciary duty"); Strougo v. BEA Assocs., No. 98 CV 3725 (RWS), 1999 WL 147737, at *3 (S.D.N.Y. Mar. 18, 1999) (§ 36(b) was "enacted 'to address a narrow area of concern:  the negotiation and enforcement of payment arrangements between the investment adviser and the fund,' not to provide a cause of action separate from 36(a) to govern the adviser's general performance or financial advice with respect to particular transactions." (internal citations omitted)).

Under § 36(b), federal courts are required to determine "whether the fees charged by investment advisers are 'excessive.'"  Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 534-41 (1984); see Midgal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 328 (4th Cir. 2001) ("Section 36(b) is sharply focused on the question of whether the fees themselves were excessive.").  To state a claim under Section 36(b), a plaintiff must plead that the challenged fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982).

The allegations of the Complaint do not concern advisory fees, much less allege that any advisory fees were excessive.  Plaintiffs have not and cannot allege any breach of "fiduciary duty with respect to the receipt of compensation for services."  Accordingly, plaintiffs' Section 36(b) claim fails as a matter of law.

**C.**     **ICA § 47(b) (Count V) is a Remedial Provision That Requires a Violation of Other Provisions of the ICA and is not, on a Stand-Alone Basis, a Cause of Action.**

Plaintiffs cannot invoke § 47(b) as an independent cause of action, as they attempt to do here.  Section 47(b) creates an equitable remedy that a court may consider to the extent a plaintiff can establish the impropriety of an advisory contract under another section of the ICA. See Tarlov v. Paine Webber CashFund, Inc., 559 F. Supp. 429, 438 (D. Conn. 1983) ("plaintiff

can seek relief under Section 47 only by showing a violation of some other section of the Act");
Galfand v. Chestnutt Corp., 545 F.2d 807, 813-814 (2d Cir. 1976) (invoking equitable remedy of
§ 47(b) only after finding defendant violated § 20(a) of the ICA).

     In addition, the text of § 47(b) makes clear that the remedy may be sought only
where a contract covered by the ICA was entered into illegally or necessarily requires violation
of the ICA through its performance.  Cf. Drasner v. Thomas McKinnon Sec., Inc., 433 F. Supp.
485, 502 (S.D.N.Y. 1977) (holding that § 29(b) of the Exchange Act, which courts look to for
interpretation of § 47(b), "only renders void those contracts which by their terms violate the
[Exchange] Act").  Here, plaintiffs make no allegations suggesting that any advisory contract
was made in violation of the ICA or that performance of any such contract caused a violation of
the ICA.  Accordingly, § 47(b) does not apply and Count V should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Morgan Stanley's and MSIA's motion to dismiss should be granted, and plaintiffs' claims against Morgan Stanley and MSIA should be dismissed with prejudice.

Dated: New York, New York
      May 6, 2005

                              Respectfully submitted,

                              SHEARMAN & STERLING LLP

                              By: <u>/s/ Brian H. Polovoy</u>
                                 Steven F. Molo (SM 1818)
                                 Brian H. Polovoy (BP 4723)

                              599 Lexington Avenue
                              New York, New York 10022-6069
                              Telephone:  (212) 848-4000
                              Fax:  (212) 848-7179

                              Attorneys for Defendants
                              Morgan Stanley and
                              Morgan Stanley Investment Advisors Inc.