## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN MARSHALL EVERETT, PAMELA A. KRAMER, and WALTER W. LAWRENCE, on Behalf of Themselves and All Others Similarly Situated, | § §  § § § § § | |
| Plaintiffs, | § § | Case No. 05-CV- 296 (DAB) |
| v. | § § | |
| MICHAEL BOZIC, EDWIN J. GARN, WAYNE E. HEDIEN, DR. MANUEL H. JOHNSON, JOSEPH J. KEARNS, MICHAEL E. NUGENT, FERGUS REID, CHARLES A. FIUMEFREDDO, JAMES F. HIGGINS, MORGAN STANLEY DEAN WITTER & CO., INC., MORGAN STANLEY INVESTMENT ADVISORS, and JOHN DOES NO. 1 through 100, | § § § § § § § § § § § | |
| Defendants. | § § | |
| JURY TRIAL DEMANDED | § | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### Table of Contents

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST ALL
        FUNDS WITHIN THE MORGAN STANLEY FAMILY OF FUNDS . . . . . . . . 4

          1.    Plaintiffs Have Standing to Bring a Direct Action Against the
              Advisors, Directors, and Affiliates of the Investment
              Company in Which They Own Shares . . . . . . . . . . . . . . . . . . . . . . . 4

          2.    Defendants' "Standing" Argument is Premature Prior to
              a Motion for Class Certification . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          3.    Plaintiffs May Represent Other Members of the Putative
              Class Since Their Claims are Based on the Same Legal
              Theories and Arise from the Same Scheme and Course
              of Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    PLAINTIFFS' CLAIMS ARE PROPERLY PLEAD AS A DIRECT ACTION . . 8

          1.    Plaintiffs' Claims are Properly Brought as a Direct Action
              Because Plaintiffs Allege an injury Directly to Plaintiffs
              and a Breach of a Duty Owed Directly to Plaintiffs . . . . . . . . . . . 9

          2.    Rule 23.1 Does Not Apply to this Direct Action . . . . . . . . . . . . .12

    C.    FEDERAL ICA CLAIMS ARE PROPERLY ASSERTED BY PLAINTIFFS . . 12

          1.    A Private Right of Action under ICA § 36(a) is Supported by
              Legislative History, Statutory Intent, and Long Established
              Jurisprudence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          2.    Plaintiffs Have Sufficiently Plead a Claim Under ICA § 36(a) . . 16

          3.    Plaintiffs Have Sufficiently Plead a Claim Under ICA § 36(b) . . 17

          4.    ICA § 47(b) Provides a Remedy for Violations of Other
              ICA Sections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Table of Authorities

**Federal Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bancroft Convertible Fund, Inc. v. Zico Inv.*
*Holdings, Inc.,* 285 F.2d 731 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Barger v. McCoy Hillard Parks,* 346 N.C. 650, 488 S.E.2d 215, 219 (N.C. 1997) . . . . . . . . . . 9

*Blatt v. Merrill Lynch,* 916 F.Supp. 1343
(D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*Brown v. Bullock,* 294 F.2d 472 (2d Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Carr v. Equistar Offshore Ltd.*, 1995 U.S. Dist.
LEXIS 13703 (S.D.N.Y. Sept. 21, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chamberlain v. Aberdeen Asset Management Ltd.*, 2005 WL 195520
(E.D.N.Y., Jan. 21, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Clark Equipment Co. v. Lift Parts Manufacturing Co., Inc.,* 972 F.2d 817, 819 n.1 (7th Cir. 1992)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992) . . . . . . . . . . . . . . . . . 8

*In re: Dreyfus Aggressive Growth Mut. Fund Litig.,*
2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Empire Life Ins. Co. of Am. v. Valdak Corp.*,
468 F.2d 330 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 6, 7

*Farragut Mortgage Co., Inc. v. Arthur Anderson, LLP,* 1999 WL 823656,
*18 (Mass. Super 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 11, 17, 19

*Garcia v. Spun Steak*, 998 F.2d 1480 , 1487, n.1 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . 16

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . 6

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC*,
298 F.3d 136, 140 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist.
LEXIS 11972 (S.D.N.Y. July 16, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Krantz v. Prudential Invs. Fund Mgmt.*,
77 F.Supp.2d 559 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Langner v. Brown*, 913 F.Supp. 260 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lessler v. Little*, 857 F.2d 866, 872-73 (1st Cir. 1988) (§17(a)(2)) . . . . . . . . . . . . . . . . . . . 13

*Levitt v. Johnson*, 334 F.2d 815 (1st Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McLachlan v. Simon*, 31 F.Supp.2d 731 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. V. Curran*, 456 U.S. 353, 380-81 (1982) . . . . . . . 14

*Meyer v. Oppenheimer Mgmt. Corp.* 764 F.2d 76
(2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Migdal v. Rowe-Price Fleming Int'l*, 248 F.3d 321, 325-25 (4th Cir. 2001 . . . . . . . . . . . . . . . 18

*In re: ML-Lee Acquisition Fund II*, 848 F.Supp. 527
(D.Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*In re: Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071,
1996 WL 328006, No. 94-C-360 (N.D. Ill. June 11, 1996) . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*Olmstead v. Pruco Life Ins.*, 283 F.3d 429 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Panfil v. Scudder Global Fund, Inc.*, 1993 WL 532537
(N.D. Ill. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pegram v. Herdrich*, 530 U.S. 211 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924, *15 (S.D.N.Y. Aug. 26, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re: Prudential Sec. Inc., Ltd. P'shp Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rohrbaugh v. Inv. Co. Inst.*, 2002 U.S. Dist. LEXIS 13401
(D.D.C. July 2, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534
(D.Del. Oct. 14, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Sosna v. Iowa*, 419 U.S. 393 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Strigliabotti v. Franklin Resources*, 2005 WL 645529
(N.D. Cal. March 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

*In re: Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Taussig v. Wellington Fund, Inc.*, 313 F.2d 472 (3d Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . 13

*Tennenbaum v. Zeller*, 552 F.2d 402 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Cartwright*, 411 U.S. 546 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Young v. Nationwide Life Ins. Co.*, 2 F.Supp.2d 914
(S.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,17

**State Cases**

*Letsos v. Century 21-New West Realty*, 675 N.E.2d 217
(Ill. App. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mann v. Kemper Fin. Co., Inc.*, 618 N.E.2d 317
(Ill. App. Ct. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Royal Carbo Corp. v. Flameguard, Inc., et al.*,
229 A.D.2d 430 (N.Y. App. Div. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


**Legislative/Statutory Materials**

15 U.S.C. § 80a-1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

15 U.S.C. § 80a-8 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 80a-35 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

15 U.S.C. § 80a-36(a)(2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 80a-36(b)(2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

15 U.S.C. § 80a-46 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 8(a)(2) (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 23.1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

H.R. Rep. No. 96-1341, (reprinted in 1980 U.S.C.C.A.N. 4800, 4808) . . . . . . . . . . . . . . . 14, 17

S.Rep. No. 91-184 at 16 (1970), (reprinted in 1970 U.S.C.C.A.N. 4897, 4931) . . . . . . . . . 15, 17

**Secondary Materials**

American Law Institute's PRINCIPLES OF CORPORATE GOVERNANCE:
ANALYSIS AND RECOMMENDATIONS § 7.01(b) (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

James D. Cox & Randall S. Thomas, "Leaving Money on the Table:
Do Institutional Investors Fail to File Claims in Securities Class Actions?"
80 WASH. U. L.Q. 855 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12

RESTATEMENT (SECOND) AGENCY § 469 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's Primer,"

112 BANKING L.J. 757 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

Alison Sahoo, *SEC Probing Funds' Participation in Class Actions*
(February 3, 2004), *at* www.ignites.com . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

Plaintiffs John Marshall Everett, Pamela A. Kramer, and Walter W. Lawrence ("Plaintiffs") bring this putative class action against the advisors, directors and affiliates of the Morgan Stanley Family of Mutual Funds.  Plaintiffs allege that the Morgan Stanley Defendants breached their fiduciary duty owed to Plaintiffs and other Morgan Stanley mutual fund holders and violated sections 36(a) and 36(b) of the Investment Company Act of 1940 ("ICA") by failing to ensure that the Morgan Stanley funds participated in securities class actions for which they were eligible.

The Motion to Dismiss filed by Defendants Morgan Stanley and Morgan Stanley Investment Advisors, Inc. (collectively the "Morgan Stanley Defendants") is without merit and should be denied. Rather than attack Plaintiffs' Complaint based upon its merits as a direct action, the Morgan Stanley Defendants deftly attempt to recast the matter as a derivative suit and proceed to argue why it fails as such.  While Defendants provide examples of how this matter *could* have been brought alternatively as a derivative, they fail to demonstrate that this matter cannot properly be brought as a direct action.  Moreover, Defendants then argue that not even a derivative suit can be sustained. Under the Morgan Stanley Defendants' view of the law, there is no procedural mechanism for Plaintiffs and other investors to seek recovery for the injuries they have suffered and the Defendants can manage the putative class members' investments with impunity.

Even more illustrative than the contents of the Motion to Dismiss is what is left out. Defendants do not dispute, even in passing, the central element underlying Plaintiffs' claims, namely that Defendants have failed to file proof of claims in settled securities cases and as a result have prevented Plaintiffs and the putative class from recovering money  to which they were rightfully entitled.  Defendants' malfeasance is emblematic of widespread problems in the mutual fund industry.  Professors at Duke and Vanderbilt have conducted empirical studies and estimated that

over sixty-eight (68) percent of institutional investors have failed to participate in securities class action settlements. James D. Cox & Randall C.S. Thomas, *Leaving Money on the Table: Do Institutional Investors Fail to File Claims in Securities Class Actions?*, 80 WASH. U. L.Q. 855 (2002)(copy attached as Exhibit 1) [hereinafter Cox & Thomas]. Shortly after this case was filed, the Securities and Exchange Commission launched an investigation into the issue. Alison Sahoo, *SEC Probing Funds' Participation in Class Actions* (February 3, 2004), *at* www.ignites.com (copy attached as Exhibit 2).

As demonstrated herein, Plaintiffs have standing to bring these claims as a direct action and therefore as a putative class action, and have sufficiently plead claims for breach of fiduciary duty, negligence, violations of sections 36(a) and 36(b), and an equitable remedy provided under 47(b) of the ICA. Accordingly, Defendants' motion should be denied.

## ARGUMENT

Defendants claim that Plaintiffs' complaint is not sufficiently, factually specific and does not comport with federal notice pleading standards. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (noting that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). The purpose of this pleading standard is to protect the wronged parties who find themselves in the very situation Plaintiffs reside herein, where Defendants have perfect and full knowledge of the scope of the wrongdoing, and Plaintiffs are forced to rely on publicly available information that admittedly does not fully tell the story. To allow Defendants to hide within their informational "black box" only perpetuates the problem the Plaintiffs have exposed and frustrates the purpose of pleading standards. Plaintiffs' eighteen page complaint clearly is not an attempt to fish for discovery. Plaintiffs have alleged a harm that they and all Class Members have suffered, the

manner in which they were harmed, and the persons and entities responsible.

When reviewing a motion to dismiss, the court must accept as true the well-pleaded factual allegations of the complaint and view those allegations in the light most favorable to the plaintiff. *Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002); *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001). A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Dismissal under Rule 12(b)(6) is deemed proper only if "it appears beyond doubt that [the] plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gryl*, 298 F.3d at 140 (2d Cir. 2002). "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (internal citations omitted). Further, a plaintiff may later add allegations by affidavit or brief, even on appeal, to clarify allegations in the complaint. *Pegram v. Herdrich*, 530 U.S. 211, 229 (2000). Unless otherwise provided by Rule 9, the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail facts upon which a claim is based. *Conley*, 355 U.S. at 47. A plaintiff is required only to provide a short and plain statement of the claim "that will give the defendant fair notice of the claim and the grounds upon which it rests." *Id.* (footnote omitted). In effect, "[a] court may dismiss a complaint only if it is clear that no relief could

3

be granted under any set of facts that could be proved consistent with the allegations." *Hishon v.*

*King & Spalding*, 467 U.S. 69, 73 (1984);  *see also Conley*, 355 U.S. at 45-46.

### A.   PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST ALL FUNDS WITHIN THE MORGAN STANLEY FAMILY OF FUNDS

Defendants' entire argument regarding standing is based upon the incorrect premise that

Plaintiffs have, or should have, brought this matter as a derivative suit.  Every case cited, and all

analysis and argument proffered, is based upon this faulty predicate.  To the contrary, however,

Plaintiffs intended to and rightfully bring this matter as a direct action and have standing to do so.

### 1.   Plaintiffs Have Standing to Bring a Direct Action Against the Advisors, Directors and Affiliates of the Investment Company in Which They Own Shares

Mutual funds are not legal entities, are not organized in any corporate form, and are not

required to register under the Investment Company Act or either of the Securities Acts.  Investment

companies, on the other hand, are legal entities, are organized under state law, and are registered

with the SEC. 15 U.S.C. § 80a-8.  Investment companies can and do issue series of shares of mutual

funds.  Mutual fund families may be comprised of one or more investment companies, which in turn

may be comprised of one or more series of mutual funds.  Mutual funds themselves are merely series

of shares of registered investment companies–in essence, they are little more than accounting entries

or a product sold and marketed for the purpose of generated pools of fee-paying customers for the

investment advisors. *See, e.g.* David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's

Primer," 112 BANKING LAW J. 763, 766 (1995)[hereinafter Riggs & Park].

Recognizing this important distinction between mutual funds and investment companies, the

ICA expressly grants standing to holders of registered investment companies, not mutual funds. *See*

15 U.S.C. § 80a-35.  Section 36(b) of the ICA provides; "An action may be brought under this

subsection . . . by a security holder of such *registered investment company* on behalf of such company." 15 U.S.C. § 80a-36(b) (emphasis added). Section 36(a) provides a cause of action for breach of fiduciary duty "in respect of any *registered investment company*." 15 U.S.C. § 80a-36(a) (emphasis added).

Plaintiff John Marshall Everett owns the Morgan Stanley Global Dividend Growth Securities Fund. Plaintiff Pamela A. Kramer owns the Morgan Stanley Information Fund and the Morgan Stanley American Opportunities Fund. Plaintiff Walter Lawrence owns the Morgan Stanley Health Sciences Trust and the Morgan Stanley Convertible Securities Trust. Each of these Funds are the sole series of Funds within their respective investment company. Thus, Plaintiffs have individual standing to pursue claims involving these five investment companies which comprise an aggregate of five mutual funds.

> 2.   Defendants' "Standing" Argument Is Premature Prior to a Motion for Class Certification

Once individual standing has been established as Plaintiffs have above, the analysis for the purpose of the Motion to Dismiss is concluded. The separate issue of whether a plaintiff can represent a putative class depends solely on whether the plaintiff meets the requirements of Rule 23 and is thus rightfully preserved for the class certification stage. *See, e.g. Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). As stated by the Supreme Court in *Sosna v. Iowa*:

> A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate," not "conjectural" or "hypothetical." . . . This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the name plaintiff representative to "fairly and adequately protect the interests of the class." Rule 23 (a).

5

419 U.S. 393, 402-403 (1975)(citations omitted).

The Rule 23 inquiry, which Defendants advance under the guise of a "standing" argument, involves an examination of various factual issues and is not properly undertaken in a motion to dismiss. *Gen. Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). The critical distinction between Article III standing and the Rule 23 inquiry was clarified in *Fallick v. Nationwide Mut. Ins. Co.*, where an employee alleged that Nationwide breached its fiduciary duties with respect to the ERISA benefit plan of which he was a member and other ERISA plans of which he was not a member. 162 F.3d 410 (6th Cir. 1998). The district court dismissed the claims as to all ERISA plans other than Fallick's plan on standing grounds. *Id.* at 411-12. The Sixth Circuit reversed, holding that the district court's reasoning was "fundamentally flawed" because it confused the issues of Article III standing for a plaintiff with the Rule 23 issues applicable to his ability to sue on behalf of a class. *Id.* at 422. The court concluded that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424. Accordingly, case law is clear that once a putative class representative has established individual standing, all further standing analysis stops until the class certification stage.

> **3.    Plaintiffs May Represent Other Members of the Putative Class Since Their Claims Are Based on the Same Legal Theories and Arise From the Same Course of Conduct**

Although analysis of this issue is premature, the case law makes clear that, upon a showing that the requirements of Rule 23 are met, a named plaintiff may represent a class of investors that includes investors in funds in different investment companies within the same mutual fund family and managed by the same advisors. This is so because of the substantially identical nature of the process (or lack thereof) for filing proofs of claim of the affected funds in the same mutual fund family, and the close interrelationship and juridical links of all the funds and persons and entities in the same mutual fund complex with each other. *See In re: Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000)(certifying named plaintiffs who invested in the Dreyfus Aggressive Growth Fund to represent purchasers in the Dreyfus Premier Aggressive Growth Fund); *Fallick*, 162 F.3d at 412 (holding that an individual in one ERISA plan can represent a class of participants in numerous plans other than his own); *Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972, at *11 (S.D.N.Y. July 16, 2003).[1]

Each mutual fund within the Morgan Stanley fund family was advised by the same investment advisors, and the claims of Plaintiffs and putative class members are based on the same legal theories. Every holder of each Morgan Stanley fund suffered the same type of injury as a result of Defendants' failure to fulfill their respective fiduciary duties. Because of the dominant role played by the fund advisors, by proving their claims, Plaintiffs will substantially prove the claims of all other class members. *See, e.g., In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 94-95 (S.D.N.Y. 1998) ("Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability" (quoting

---

[1]     *Cf. In re Prudential Sec. Inc.. Ltd. P'shp Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (class representatives were not required to have invested in all limited partnerships at issue, where complaint alleged a "uniform course of improper conduct and standardized sales approach applied by defendants"); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested in three limited partnerships could represent persons who had invested in two other limited partnerships, where the complaint alleged that investors in all five limited partnerships were victims of a single pattern of fraud by defendants).

*In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)). So, the fact that Plaintiffs do not own shares in each and every fund series within the relevant investment companies will not be a significant issue at the class certification stage of this case.[2]

### B.   PLAINTIFFS CLAIMS ARE PROPERLY BROUGHT AS A DIRECT ACTION

Although ignored by Defendants, numerous courts have found that an investor may bring a direct action, rather than a derivative action, under the ICA.[3] A clearly stated objective of the ICA is to "protect[] all classes of investment company security holders from the special interests of directors, officers . . . and preventing investment companies from failing to protect 'the preferences and privileges of the holders of their outstanding securities.'" ICA § 1(b). This view has recently been reinforced by the holding in *Strougo v. Bassini*, where the Second Circuit held that mutual fund investors have standing to bring direct actions asserting private rights of action under several sections of the ICA. 282 F.3d 162 (2d Cir. 2002). An action that is properly brought as a direct action may also be brought as a class action (presuming the requirements of Rule 23 are met); ergo, Plaintiffs' claims are properly brought as a putative class action.

### 1.   Plaintiffs' Claims are Properly Brought as a Direct Action Because Plaintiffs Allege an Injury Directly to the Plaintiffs and a Breach of a Duty Owed Directly to the Plaintiffs

---

[2]      Even if it had merit, Defendants' "standing" argument would not even provide basis for denial of class certification. If any of the Defendants' contentions were legitimate, there are more sensible procedural mechanisms for addressing these issues at the class certification stage. For instance, the Court may allow Plaintiffs to proceed and add named plaintiffs at the class certification stage, after the close of discovery, or at another point prior to trial, or the Court may order Plaintiffs to provide a list of additional plaintiffs, who can be added, and the Court can deem the complaints mended *nunc pro tunc* in this regard, if the court deems it necessary.

[3]      *See, e.g., Stougo v. Bassini*, 282 F.3d 162, 176–77 (2d Cir. 2002) (holding direct action was appropriate under 36(a), 36(b), and 48 of the ICA); *Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (finding that remaining claims (§§ 36(b), 10(a), 17(a), 17(d) survived after dismissal of derivative claims); *Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534, at * 15–18 (D. Del. Oct. 14, 1994) (holding that ICA claims that affected plaintiff personally could be maintained as a direct action); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 562 (D. Del. 1994) (holding that suit was appropriate for class action).

Derivative and direct actions are not mutually exclusive; in fact, derivative and direct claims may be brought simultaneously.[4] *Empire Life Ins. Co. of America v. Valdak Corp.,* 468 F.2d 330, 334-35 (5th Cir. 1972). Under Massachusetts law, a shareholder may maintain a direct action for an injury that directly affects the shareholder, "even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Farragut Mortgage Co., Inc. v. Arthur Anderson, LLP,* 1999 WL 823656, *18 (Mass. Super 1999) (citing *Barger v. McCoy Hillard Parks,* 346 N.C. 650, 488 S.E.2d 215, 219 (N.C. 1997); *see also Lapidus v. Hecht,* 232 F.3d 679 (9th Cir. 2000) (applying Massachusetts law). As Plaintiffs demonstrate, the injury sustained by Plaintiffs was distinct from the Funds' injury (and from subsequent but present investors in those funds), and Defendants owe a fiduciary duty directly to Plaintiffs, Class Members, and all other fund investors.

Given the unique structure of mutual funds and investment companies, it is the individual investors, rather than the funds, that suffer the consequences of Defendants' failure to ensure participation in securities class action settlements. "Mutual funds are fundamentally different from most enterprises in both their structure and operation." Riggs & Park, 112 BANKING LAW J. at 763. "A mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belong to the individual investors holding shares in the fund." *Tennenbaum v. Zeller,* 552 F.2d 402, 405 (2d Cir. 1977); *see also* Riggs & Park, 112 BANKING LAW J. at 758 (mutual funds serve as "conduits between investors and investment managers for the rendering of the manager's services"). Mutual funds "do not typically have employees or any physical plant" and have "virtually no liabilities."

---

[4]     The issue of whether this lawsuit could be brought, in the alternative, as a derivative is not before the court at this time and Plaintiffs therefore take no position on this issue.

*Id.* at 763, 767.   Each investor who pools his money with others in a mutual fund owns a proportional share of the total assets of the mutual fund.  The value of each investor's portion of those pooled assets is determined by taking the market value of all of the fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities (primarily fees paid to Defendants), and dividing the result by the number of shares outstanding.  *United States v. Cartwright*, 411 U.S. 546, 548 (1973).  This so-called "per share net asset value" (NAV) is computed daily so that any gain or loss in fund assets is immediately allocated to the individual investors as of that specific date.  Accordingly, mutual funds are unlike conventional corporations in that any increase or decrease in fund assets is *immediately* passed on *directly to the fund investors*.

Recognizing this unique structure, the court in *Strigliabiotti v. Franklin Resources* recently rejected the same argument that Morgan Stanley Defendants make here and allowed the plaintiff to proceed with a direct action.  2005 WL 645529 (N.D. Cal. March 7, 2005)(copy attached as Exhibit 3).  *Strigliabiotti* involved allegation of excessive fees charged by the fund advisors.  Defendants contended that the fees were paid by the fund rather than the individual investors and that therefore the injury was sustained by the fund.  The Court rejected this argument as illusory, noting that "[e]very dollar of expense borne by the fund is distributed to the shareholders, as a pro rata deduction from the net asset value per share."  *Id.* at 7.  The Court explained: "the financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis."  *Id.* at 8.

The same reasoning applies here, where Plaintiffs and the putative class members are injured directly by Defendants' actions.  Had Defendants ensured that the Funds participated in the securities class action settlements, the settlement funds would have increased the total assets held by the Funds and such increase would have been distributed immediately to the then-current investors on a pro

10

rata basis upon the recalculation of the NAV. There is no concrete injury to the Fund itself; similarly, there is no injury whatsoever to shareholders who invest in the fund subsequent to the time of injury.[5] Accordingly, since Plaintiffs have alleged a direct injury to themselves and the putative class members, this case is properly brought as a direct action.

In addition, Defendants have breached a fiduciary duty owed directly to Plaintiffs and the putative class members. "Directors of mutual fund [hold] a position of trust and confidence with respect to the fund's shareholders, and [owe] them the obligations commonly associated with fiduciaries." *Galfand v. Chestnutt,* 402 F. Supp. 1318, 1328 (S.D.N.Y. 1974), *affirmed and remanded on other grounds* 545 F.2d 807, *affirmed* 573 F.2d 1290; *see also* Cox & Thomas, 80 WASH. U. L.Q. at 860, 863 (discussing fiduciary duty owed by trustee/directors directly to investors). In addition, given that a mutual fund is merely "a conduit for the rendering of investment management services, " 112 BANKING LAW JOURNAL 763, the advisors and their affiliates owe fiduciary duties directly to the individual investors just as they do to any other investors they advise. *Panfil v. Scudder Global Fund, Inc.,* 1993 WL 532537, *4 (N.D. Ill. 1993); *Mann v. Kemper Financial Co., Inc.,* 618 N.E.2d 317, 327 (Ill. App. 1992); *see also* Cox & Thomas, 80 WASH. L. J.Q.. at 863 (fund advisor is " a vendor of services to the mutual fund company, seen as having a fiduciary obligation to the fund and to the fund's shareholders"); 15 U.S.C. § 80a-1 (policy of ICA is to protect "interest of *investors*" directly (emphasis added)). Accordingly, Plaintiffs' allegations of breaches of duties owed directly to them and the putative class members provides a separate premise for pursuing this action directly.

---

[5]     In contrast, in the context of a traditional corporation, there would be no direct, objective or calculable correlation between the value of an individual share and any gains or losses in the small portion of that corporation's assets that may be invested in the market, since the value of a share of a traditional corporation is based upon numerous, subjective market forces, related to factors both internal and external to the corporation.

2.     **Rule 23.1 Does Not Apply to This Direct Action**

Defendants assert that Plaintiffs failed to comply with Federal Rules of Civil Procedure 23.1. However, as a direct action rather than derivative action has been plead, compliance with Federal Rules of Civil Procedure 23.1 is inapplicable.

C.     **FEDERAL ICA CLAIMS ARE PROPERLY ASSERTED BY PLAINTIFFS**

1.     **A Private Right of Action under ICA § 36(a) is Supported by Legislative History, Statutory Intent, and Long Established Jurisprudence**

In determining whether to imply a private right of action, this court must look to the statutory language, congressional intent, and the statute's legislative history. *Alexander v. Sandoval*, 532 U.S. 275, 286–88 (2001). As a general matter, a statute creates a private right of action if its language is "phrased in terms of the persons benefitted." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). The Congressional declaration of policy in the ICA specifically addresses the plight of investors like the plaintiffs':

> "it is hereby declared that the policy and purposes of this title, in accordance with which the provisions of this title shall be interpreted, and are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors."

15 U.S.C. § 80a-1.

Consistent with this declaration of policy, federal courts have long recognized implied private rights of action under numerous sections of the ICA .[6] More specifically, over the course of the last four decades, courts in nearly every circuit have implied such actions under section 36(a) of the ICA.

---

[6]     *See, e.g., Lessler v. Little*, 857 F.2d 866, 872-73 (1st Cir. 1988) (§17(a)(2)); *Bancroft Convertible Fund, Inc. v. Zico Investment Holdings Inc.*, 825 F.2d 731, 733 (3d Cir. 1987) (§ 10); *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 87–88 (2d Cir. 1985) (§ 15(f) & 36(b)); *Taussig v. Wellington Fund, Inc.*, 313 F.2d 472, 475–76 (3d Cir. 1963) (§ 35(d)); *Brown v. Bullock*, 294 F.2d 415, 421 (2d Cir. 1961) (§§ 15 and 37)); *In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at * No. 94- C-360 (N.D. Ill. June 11, 1996) (§§ 34 (b), 36(a)); *Langner v. Brown*, 913 F. Supp. 260, 268–70 (S.D.N.Y. 1996) (§§ 10(a), 36(b), 17(a), 17(d), 20); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1349 (D.N.J. 1996) (§§ 7(d), 13(a)(3)); *Carr v. Equistar Offshore, Ltd.*, 1995 U.S. Dist. LEXIS 13703, at * 42–45 (S.D.N.Y. Sept. 21, 1995) (§ 7(d)); *Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534, at * 20–24 (D. Del. Oct. 14, 1994) (§§ 36(a), 56(a), 57(a), 57(d)), 17(j)); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 541 (D. Del. 1994) (§§ 17(j), 36, 48, 57).

*See e.g., Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) (recognizing implied rights of action for damages under section 36(a) of Investment Company Act where advisers or directors breach fiduciary duty); *McLachlan v. Simon*, 31 F.Supp.2d 731, 737 (N.D.Cal.1998) (clearly holding that a private right of action exists under 36(a)); *Young v. Nationwide Life Ins. Co.*, 2 F.Supp.2d 914, 925–26 (S.D. Texas 1998) (stating, "this Court is also persuaded that a private cause of action should and does exist under § 36(a) of the ICA"); *In re Nuveen Fund Litig.*, No. 94-C-360, 1996 WL 328006, at *6 (N.D.Ill. June 11, 1996) ("Accordingly, the court accepts Magistrate Judge Bobrick's recommendation to imply private rights of action under ICA § 34(b) and ICA § 36(a)."); *Seidel v. Lee*, No. Civ A. 93-494, 1994 WL 913930, at * 2 (D.Del. Oct. 14, 1994) (refusing to dismiss plaintiffs' 36(a) individual claims); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F.Supp. 527, 539–45 (D.Del.1994) ("Thus, the Court believes Congress intended courts to continue to imply private rights of action for conduct proscribed under section 36(a)"); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir.1968) (court considering issue of private right of action on its own motion); *Levitt v. Johnson*, 334 F.2d 815, 819 (1st Cir.1964) (finding private right of action was consistent with policy and case law), *Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731, 735 (3d Cir.1987) (holding that creation of private right of action under 36(b) did not destroy private rights of action under other sections of the ICA).

An important factor in these holdings has been that the legislative history consistently supports implied rights of action under section 36(a) each time the ICA has been amended. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 380-81, 102 S.Ct. 1825, 1839-40 (1982). As summarized in *In re: Nuveen Fund Litig.*, 1996 WL 328006, at *6 (N.D. Ill. June 11, 1996), "Even though Congress has revisited the ICA three times since courts began to imply such causes of action, it has never indicated its dissatisfaction with this practice."

13

In *Bancroft*, the Third Circuit stressed Congress's express encouragement of private actions in the legislative history to the 1980 amendments:

> "The Committee wishes to make plain that it expects the courts to imply private rights of action under this legislation, where the plaintiff falls within the class of persons protected by the statutory provision in question. Such a right would be consistent with and further Congress' intent in enacting that provision, and where such actions would not improperly occupy an area traditionally the concern of state law. In appropriate instances, for example, breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act. With respect to business development companies, the Committee contemplates suits by shareholders as well as by the Commission, since these are the persons the provision is designed to protect, and such private rights of action will assist in carrying out the remedial purposes of Section 36."

*Bancroft Convertible Fund v. Zico Holdings Inv.*, 825 F.2d at 736 (*quoting* H.R.Rep. No. 1341, 96th Cong., 2d Sess. 28-29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4800, 4810-11). The Third Circuit concluded: "Clearly, the Committee Report expressly approves the position of those courts which, following the 1970 amendments, held that private causes of action should be implied from the [ICA]." *Id.* at 733, 736.

After reviewing this and other legislative history, the court in *Young v. Nationwide Life Ins.*, reached the same conclusion. 2 F. Supp.2d 914, 925 (S.D. Tex. 1998). The *Young*-court also highlighted the 1970 amendments: "Furthermore, when §36 was amended in 1969 and an express private remedy was added to subsection (b), the legislative history indicates that 'the fact that subsection (b) specifically provides for a private right of action should not be read by implication to affect subsection (a)'" *Id.* (*quoting* S.REP. No. 91-184, at 16 (1969)). The *Young*-court concluded: "In this case, there is only one definitive answer that can be gleaned from the legislative history of the 1980 amendments: Congress expects courts to imply private rights of action. The Court cannot ignore such strong Congressional sentiments." *Id.*

Relying on *Olmstead v. Pruco Life Ins.*, 283 F.3d 429 (2d Cir. 2002) and *Chamberlain v. Aberdeen Asset Management Ltd.*, 2005 WL 195520 (E.D.N.Y., Jan. 21, 2005), Defendants ask this court to ignore these Congressional sentiments and to abandon the decades of jurisprudence discussed above. *Olmstead* does not support Defendants' position.  The *Olmstead* court's ruling only concerned claims under ICA §§ 26(f) and 27(I), neither of which is at issue here.  Although the *Olmstead* Court, in *dicta,* broadly characterized the decades of precedent finding implied rights of action under Section 36(a) and other sections of the ICA as part of an "ancien regime", the Court did recognize it was an "impressive list" with little dissension and the Court had no substantive criticism of those numerous decisions.  On closer analysis, as demonstrated above, it is clear that the long line of precedent is consistent with current Supreme Court guidance on implied rights of action. *See, e.g. Young,* 2 F.Supp. 2d at 922-26.   Moreover, in *Strougo v. Bassini,* 282 F.3d 162, (2d Cir. 2002), decided contemporaneously with *Olmstead,* the Second Circuit squarely addressed § 36(a).  The Second Circuit reaffirmed its earlier ruling in *Fogel v. Chestnutt, supra,* and continued to imply a private right of action stating, "We thus see nothing in the general policies of the ICA that would militate against importing Maryland's rules of shareholder standing for claims brought for alleged violations of the ICA sections cited by the plaintiff....  We hold that the plaintiff's alleged injuries associated with coercion support direct claims under both Maryland law and, in this case, §§ 36(a), 36(b), and 48 of the ICA." *Id.* at 176–77.

Finally, Defendants' reliance on *Chamberlain v. Aberdeen Asset Mgmt. Ltd.,* No. 02 CV 5870 (E.D.N.Y., Jan. 21, 2005) is improper because, as Defendants recognize, that opinion has been vacated. (*See Chamberlain* Order attached as Exhibit 4).  Although there has been some controversy among the lower courts over whether decisions should be vacated pursuant to a settlement, the U.S. Supreme Court has approved the procedure. *See Clark Equipment Co. v. Lift Parts Manufacturing Co., Inc.,* 972 F.2d

817, 819 n.1 (7th Cir. 1992) (and cases cited therein).  Regardless, once a decision has been vacated, the

decision has no precedential authority. *Garcia v. Spun Steak*, 998 F.2d 1480, 1487, n.1 (9th Cir. 1992).

In summary, because this action is brought by a mutual fund investor, pursuant to statutory

provisions intended to protect such a class, jurisprudence implying private rights of action under the

ICA, legislative history, and statutory intent all support the rights asserted by Plaintiffs.

2.      **Plaintiffs Have Sufficiently Pled a Claim under ICA § 36(a)**

ICA § 36(a) prohibits " any act or practice constituting a breach of fiduciary duty involving

personal misconduct in respect to the registered investment company." 15 U.S.C. § 80a-35(a). Contrary

to Defendants' argument, violations of section 36(a) are not limited to the context of "self-dealing." In

*Young v. Nationwide Life Ins. Co.*, the court specifically rejected this argument, relying, in part, on the

legislative history, which provides that "any '*nonfeasance of duty or abdication of responsibility* would

constitute a breach of fiduciary duty involving personal misconduct.'" 2 F. Supp. 2d 914, 927 (S.D. Tex.

1998) (*quoting* S.Rep. No. 91-184 at 16 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4931 (emphasis

added); *see also* H.R. Rep. No. 96-1341, *reprinted in* 1980 U.S.C.C.A.N. 4800, 4808 ("The Committee

believes that the type of misconduct covered by [§ 36(a) ] ... extends to personal misconduct evidenced

by misfeasance or nonfeasance in carrying out legal responsibilities as well as self-dealing and other

examples of unjust enrichment"; *In re Nuveen Fund Litig.*, 1996 WL 328006, at *12 (N.D. Ill. June 11,

1996) ("[n]onfeasance of a duty or abdication of responsibility would constitute a breach of fiduciary

duty involving personal misconduct" in proper cases).

Accordingly, by pleading nonfeasance and malfeasance on the part of the Defendants in failing

to maximize the investors' financial return and by failing to ensure participation in securities class

actions, Plaintiffs have properly pled a claim under section 36(a) of the ICA and Defendants' motion to

dismiss should be denied.

### 3.   Plaintiffs Have Sufficiently Pled a Claim Under ICA 36(b)

ICA Section 36(b) provides a federal remedy for breaches of fiduciary duty by Fund advisors and their affiliates. While there must be some relationship between the fees paid to the Fund Defendants and the wrongful conduct alleged, the focus of Plaintiffs' allegations need not be entirely on fees. For example, courts have "permitted challenged under section 36(b) for breaches of fiduciary duty as long as they result in or pertain to excessive fees." *Rohrbaugh v. Inv. Co.*, 2002 U.S. Dist. Lexis 13401, *32 (D.D.C. July 2, 2002); *see also Galfand v. Chestnutt Corp.*, 545 F.2d 807, 811-12 (2d Cir. 1976)(permitting §36(b) claim for fee mismanagement when investment adviser withheld information regarding his proposed contract.)

Plaintiffs have alleged that as a result of their systematic breaches of fiduciary duty, Defendants are not entitled to any compensation from Plaintiffs and the Class. Compl. at ¶¶ 1, 33, 48. *Krantz v. Prudential Invs. Fund Mgmt. L.L.C.*, 77 F.Supp.2d 559, 565 (D.N.J. 1999)(holding that "receipt of compensation while breaching a fiduciary duty violates Section 36(b), 15 U.S.C. § 80a-35(b)."); *Letsos v. Century 21-New West Realty*, 675 N.E.2d 217 (Ill.App. 1996); *Royal Carbo Corp. v. Flameguard, Inc. et al.*, 229 A.D.2d 430 (N.Y. App. Div. 1996) ("it is well settled that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally not entitled to recover compensation, whether commissions or salary."); RESTATEMENT (SECOND) OF AGENCY § 469 (1958) ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty or loyalty; if such conduct constitutes a willful and deliberate breach of his contract of services, he is not entitled to compensation even for properly performed services for which no compensation is apportioned"). As such, Plaintiffs have alleged that *any and all* compensation Defendants received for their services to fund shareholders is excessive.

Defendants' argument that Plaintiffs have failed to plead with sufficient specificity their claims with respect to the connection between their breaches of fiduciary duty and excessive compensation implies a heightened pleading standard which does not apply to ICA claims. To sufficiently plead ICA claims, Plaintiffs must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2), *Migdal v. Rowe-Price Fleming Int'l*, 248 F.3d 321, 325-25 (4th Cir. 2001).  Plaintiffs need only provide a "factual basis for believing that a legal violation has actually occurred." *Migdal* at 328. "It is unnecessary for the plaintiff to set forth evidentiary details to support this allegation," or to plead evidentiary support for each element of the claim which must be established at trial. *Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924, *15 (S.D.N.Y. Aug. 26, 2004) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Plaintiffs have established a sufficient nexus between Defendants' actions, or lack thereof, and the excessive fees they have received from Plaintiffs and other putative Class Members as a result. Accordingly, Plaintiffs have adequately plead a claim under §36(b).

### 4.   ICA § 47(b) Provides a Remedy for Violations of Other ICA Sections

As Defendants recognize,  ICA § 47(b) is primarily remedial in nature. *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 813–14 (2d Cir. 1976).  The section provides an equitable remedy upon a showing of a violation of other sections of the ICA, stating: "[a] contract that is made, or whose performance involves, a violation of this subchapter ... is unenforceable by either party." 15 U.S.C. § 80a-46(b). Therefore, Plaintiffs do not need to show independent standing to pursue a claim under section 47(b). Instead, Plaintiffs' Complaint  seeks the  relief provided by § 47(b) (rescission of the contract and forfeiture of fee)  as an equitable  remedy for Defendants' violation of §§ 36(a) and 36(b) of the ICA as demonstrated herein.   Complaint ¶¶ 46-48; *see, e.g. Esplin v. Hirschi*, 402 F.2d 94, 104-105 (10th Cir. 1969) (in direct, class action, rescission of contract allowed pursuant to § 47(b)); *Blatt v. Merrill Lynch,*

*Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343 (D.N.J. 1996) (recognizing private right of action for violation of § 47(b), upon showing of violation of other sections of ICA in direct, class action).

## CONCLUSION

Plaintiffs have standing to file the claims contained in his complaint, and have plead them sufficiently.  Accordingly, Defendants' Motion to Dismiss should be denied.

Dated: June 7, 2005

Respectfully submitted,

By:

Gary Klein, Esq. (GK - 5632)
Perry Weitz
John Broaddus
**WEITZ & LUXENBERG, P.C.**
180 Maiden Lane
New York, New York 10038-4925
(212) 558-5500
(212) 344-5461 fax

Randall K. Pulliam
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219-4281
(214) 521-3605/(214) 520-1181 fax

Hank Bates
J. Allen Carney
Brooke Augusta Owen
**CAULEY BOWMAN CARNEY & WILLIAMS**
11311 Arcade Dr., Suite 200
Little Rock, Arkansas 72212
(501) 312-8500/(501) 312-8505 fax